Monagas, Demandante y Apelado, *v.* Rivera et al., Demandados y Apelantes.

No. 3267.—*Visto:* Junio 10, 1924. *Resuelto:* Julio 26, 1924.

Cortes de Igual Categoría—*Injunction* de una Corte para Restringir Procedimientos de Otra—Jurisdicción.—Cuando se presentó la demanda de *injunction* origen de este pleito, ya la Corte Suprema había resuelto la cuestión de traslado a favor de la Corte de Distrito de Mayagüez, y eso no obstante, el segundo mandamiento para ejecutar la sentencia dictada en rebeldía por la Corte de Distrito de San Juan, Primer Distrito, y que había caído por su base a virtud de la resolución del Supremo (*Santalís* v. *El Zenit*, 28 D. P. R. 701), fué expedido. Si no de hecho, *de jure* el pleito estaba bajo la jurisdicción de la Corte de Distrito de Mayagüez. Además, los bienes embargados y que corrían el riesgo de ser vendidos en pública subasta, estaban sujetos a una administración judicial decretada por la Corte de Distrito de Mayagüez, y se trataba de ocho pólizas distintas que podían ser adquiridas por otras tantas personas, siendo evidente la multiplicidad de procedimientos que podría surgir. Bajo esas circunstancias es necesario concluir que el *injunction* para impedir que el márshal de la corte de San Juan vendiera las pólizas fué librado con jurisdicción por la Corte de Distrito de Mayagüez, siendo por lo tanto el presente caso una excepción a la regla que prohibe a una corte restringir por medio de *injunction* los procedimientos de otra de igual categoría.

SENTENCIA de *A. Acosta,* J. (Mayagüez), declarando con lugar demanda de injunction, con las costas. *Confirmada.*

*H. F. Besosa,* abogado de los apelantes; *J. Sabater,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Juan A. Monagas como administrador de los bienes del finado John J. Siebert, estableció en la Corte de Distrito de Mayagüez un pleito sobre injunction contra J. Rivera Cabrera, Márshal de la Corte de Distrito de San Juan, Primer Distrito, y la Corporación Simmons Hardware Co., de Missouri.

En la demanda se alegó, en resumen, que la corporación demandada inició, el 7 de noviembre de 1921, en la Corte de Distrito de San Juan, Primer Distrito, un pleito en cobro de pesos contra Healy & Siebert; que los herederos de Siebert alegando ser la verdadera parte demandada en dicho pleito comparecieron en el mismo a los solos efectos de pedir el traslado a la Corte de Distrito de Mayagüez, lugar de su residencia; que el traslado fué negado y la resolución apelada para ante la Corte Suprema; que la corporación Simmons Hardware Co. siguió gestionando y obtuvo una sentencia en rebeldía del demandado y para ejecutarla embargó una goleta de la propiedad de los herederos de Siebert y se la adjudicó por una suma menor que el importe de la sentencia por no existir postores el día de la subasta; que así las cosas la Corte Suprema el 28 de julio de 1922 resolvió la cuestión de traslado revocando la resolución de la Corte de Distrito de San Juan y ordenando que el pleito fuera remitido a la de Mayagüez (31 D.P.R. 135); que eso no obstante la corporación demandada obtuvo del Secretario de la Corte de Distrito de San Juan que expidiera un mandamiento para continuar la ejecución de la indicada sentencia en rebeldía y en cumplimiento del mismo se embargaron ocho pólizas de seguro pertenecientes a los herederos de Siebert, por lo que éstos, para impedir el remate y evitar una mul-

tiplicidad de procedimientos, acudieron a la corte de su. domicilio y entablaron la demanda de *injunction* a que nos referimos en el párrafo primero de esta opinión.

Se libró una orden de injunction preliminar, quedando en entredicho las partes. La demandada excepcionó la demanda alegando que la Corte de Mayagüez carecía de jurisdicción. La excepción fué declarada sin lugar concediéndose a la demandada quince días para contestarla. No se aprovechó del plazo la demandada, apeló para ante esta Corte Suprema y su apelación fué desestimada por tratarse de una orden que no ponía fin al litigio. Solicitó la parte demandante, vista la actitud de la demandada, que se dictara sentencia, y así lo hizo la corte quedando en tal virtud convertida en perpetua la orden de injunction preliminar. Y contra esa sentencia, dictada el 11 de enero de 1924, fué que se interpuso el presente recurso de apelación.

Antes de entrar en los méritos del caso, diremos que debe declararse sin lugar la moción de la parte apelada pidiendo la desestimación del recurso por tratarse de una cuestión académica. Es cierto que de los autos resulta que la sentencia que sirvió de base a los embargos fué declarada nula por la propia Corte de Distrito de San Juan que la dictara, que apelada la resolución fué desestimado el recurso quedando por tanto firme la declaración de nulidad y que siendo ello así parece es innecesario resolver si procedía o nó el injunction paralizando cierta subasta declarada ya nula de modo definitivo. Sin embargo queda en pie por lo menos una condena en costas que hace indispensable investigar y resolver si la corte que la impuso tenía o nó jurisdicción para ello.

La verdadera cuestión legal envuelta ha sido bien presentada por la parte apelante, así: ¿Puede una corte restringir, suspender o anular por medio de *injunction* las actuaciones, sentencias o mandamientos de otra corte de igual categoría?

En el caso de *Benítez* v. *Portela et al.*, 27 D.P.R. 919,

922, esta corte por medio de su Presidente Hernández se expresó así:

"La cuestión levantada sobre falta de jurisdicción de la Corte de distrito de Humacao para expedir el injunction solicitado no es nueva y antes de ahora ha sido considerada y resuelta por esta Corte Suprema en el caso de Sucn. *Iglesias* v. *Bolívar,* 11 D.P.R. 571. Entonces dijimos que con arreglo a la jurisprudencia de California era necesario entablar los procedimientos de *injunction* en la corte que dictara la sentencia o decreto cuya ejecución se tratara de suspender o en la corte en que se siguieran dichos procedimientos; y para sostener esa doctrina nos referimos a los casos de *Crowley* v. *Davis,* 37 Cal. 268; *Hockstacker* v. *Levy,* 11 Cal. 76; *Uhlfelder* v. *Levy,* 9 Cal. 615; *Gorham* v. *Toomey,* 9 Cal. 77; *Chipman* v. *Hibbard,* 8 Cal. 270; *Rickett* v. *Johnson,* 8 Cal. 35; y *Revalk* v. *Kraemer,* 8 Cal. 71. Y el fin de dicha regla, como dijo el Juez Sr. Sprague en el caso de *Crowley* v. *Davis,* no ha sido precisamente proteger los derechos de las partes sino más bien proteger los derechos de las cortes de igual categoría, para evitar conflicto de jurisdicción, demora y la confusión en la administración de justicia.

"Y antes de resolver el caso de *Sucn. Iglesias* v. *Bolívar, supra,* en otro caso anterior de *The Bonnie Fruit Co.* v. *Dávila* et al., 7 D.P.R. 442, dejamos establecido que una solicitud en que se pide un mandamiento de *injunction* para suspender un procedimiento es un incidente o procedimiento colateral de la demanda principal, y es regla de procedimiento que el que conoce de lo principal debe conocer de lo accidental o accesorio."

Esa es la regla general, pero existe la excepción y el caso que examinamos está comprendido dentro de ella como veremos en seguida.

Cuando se presentó la demanda de *injunction,* ya la Corte Suprema había resuelto la cuestión de traslado a favor de la Corte de Distrito de Mayagüez, y eso no obstante, el segundo mandamiento para ejecutar la sentencia dictada en rebeldía por la Corte de San Juan y que había caído por su base a virtud de la resolución del Supremo (*Santaliz* v. *El Zenit,* 28 D.P.R. 701), fué expedido. Si no de hecho, *de jure* el pleito estaba bajo la jurisdicción de la Corte de Distrito de Mayagüez. Además, los bienes embargados y que

corrían el riesgo de ser vendidos en pública subasta, estaban sujetos a una administración judicial decretada por la Corte de Distrito de Mayagüez, y se trataba de ocho pólizas distintas que podían ser adquiridas por otras tantas personas, siendo evidente la multiplicidad de procedimientos que podría surgir. Bajo esas circunstancias es necesario concluir que el *injunction* fué librado con jurisdicción por la Corte de Distrito de Mayagüez.

En el propio caso de *Uhlfelder* v. *Levy,* 9 Cal. 608, citado en el de *Benítez* v. *Portela, supra,* en apoyo de la regla general, se dice:

"Es cierto que pueden haber excepciones a la regla general, de que una corte de distrito no puede restringir los procedimientos de otra. Un caso que no viene dentro de la razón de la regla no vendría dentro de la regla misma. Así también en casos en que las prescripciones del Código requieran que la acción sea juzgada en un condado particular, entonces cabría la excepción. Desde luego, una prescripción positiva del estatuto, que requiere que un pleito se radique en un condado particular, debe cumplirse." 9 Cal. 608, 614.

El derecho que tiene un demandado a serlo en la corte del lugar de su domicilio, está garantizado expresamente por la ley, y aquí ese derecho le había sido ya reconocido por la Corte Suprema cuando la orden de injunction fué expedida.

"Bajo la regla de que una corte no puede controlar los autos de otra corte," dice Corpus Juris, "se ha resuelto usualmente que una corte no puede prohibir la expedición. por otra de una orden de ejecución; ni el embargo o el cumplimiento de una orden de ejecución librada en virtud de tal sentencia de otro tribunal, ni una venta en virtud de tal sentencia, aun cuando una orden de ejecución de la corte de un condado sea puesta en manos del alguacil de otro condado. En algunos casos, sin embargo, el derecho de una corte a prohibir el cumplimiento de una orden de ejecución librada por otra corte, ha sido reconocido. Una corte puede prohibir la comisión de actos ilegales en virtud de auto final de otra corte, tales como el embargo o venta de propiedad exenta, o de terreno reclamado como homestead, o el cumplimiento de una orden de ejecu-

ción librada en virtud de sentencia nula o ya satisfecha." 15 C.J. 1143.

*Debe confirmarse la sentencia apelada.*